**S. Victor PATURZO, Individually and as representative of a class of all owners and/or beneficiaries of whole life policies of insurance issued by Home Life Insurance Company, a body corporate as provided by FRCP 23**

**v.**

**HOME LIFE INSURANCE COMPANY, a body corporate and Thomas J. Hatem, Maryland State Insurance Commissioner, and his statutory predecessors, Individually and as representative of all State Insurance Commissioners administrating under statutes similar to the Insurance Code of Maryland.**

**Civ. No. 73–1172–K.**

United States District Court, D. Maryland.

Sept. 30, 1974.

---

C. Edward Jones and Joseph P. Mc-Curdy, Jr., Baltimore, Md., for plaintiff.

Benjamin R. Civiletti and J. Frederick Motz, Baltimore, Md., for Home Life Ins. Co.

Francis B. Burch, Atty. Gen., Thomas G. Young, and David C. Hjortsberg, Asst. Attys. Gen., Baltimore, Md., for Thomas J. Hatem, Maryland State Ins. Comm'r.

FRANK A. KAUFMAN, District Judge.

In his original complaint in this case, Paturzo, a Maryland citizen, on his own behalf and as the representative of a class, named as the sole defendant the Home Life Insurance Company, a New York citizen. Jurisdiction was asserted under 28 U.S.C. § 1332.

The following facts are alleged and are not in dispute. On March 3, 1965, plaintiff purchased a $200,000 life insurance policy on the life of his father, and named plaintiff as the primary beneficiary. All premiums were paid for the policy year beginning March 3, 1972 before the insured died on April 11, 1972.

The policy contains the following dividend provision:

*Annual Participation.* This policy, unless it is in force as Extended Term Insurance, will be credited with such dividends as may be apportioned annually by the Company. Any dividend apportioned to this policy will be payable at the end of the first policy year, provided the second year's premiums are paid and at the end of each subsequent policy year to maturity, provided all premiums due have been paid to the end of that policy year.

Plaintiff claims entitlement to payment in full of a "post-mortem" dividend for the policy year which ended March 3, 1973. That dividend, none of which has been paid, is approximately $2438.00. Plaintiff seeks recovery for himself of that amount and on behalf of those similarly situated of dividends under identical policy provisions.

■■ The face of Paturzo's original complaint discloses that the $10,000 jurisdictional prerequisite of 28 U.S.C. § 1332 is not met, either by the plaintiff's individual claim or by his class action claim, or both. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), has established that in order to meet that prerequisite in a class action based upon separate and distinct claims the amount in controversy between each of the named plaintiffs and the defendant must exceed $10,000. *Cf.* Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

In his amended complaint, plaintiff has added Thomas J. Hatem, Insurance Commissioner of the State of Maryland, as an additional party defendant, asserting jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, and alleging that Hatem, who, under 5A Md.Ann.Code art. 48A, § 24 (1972 Replacement Vol.), is charged with regulating insurance in Maryland, failed to perform his statutory duty because he has not required Home Life Insurance Company to pay post-mortem dividends of the type claimed herein. Plaintiff has not alleged that he has ever made demand upon the Commissioner to investigate or pursue plaintiff's claim that Home Life (and perhaps other insurance companies) have breached their contractual duties to plaintiff and others similarly situated. Although plaintiff, in his amended complaint, continues to claim diversity jurisdiction over Home Life, he also asks this Court to exercise pendent jurisdiction over that company in view of the 1983 allegations directed against Hatem.

Both defendants have filed motions to dismiss for lack of subject matter jurisdiction. In that connection Hatem has contended *inter alia,* that his inclusion as a defendant destroys 1332 jurisdiction over Home Life if such exists. Home Life additionally takes the position that plaintiff's claim herein has been adjudicated and decided adversely to him in another action filed in this court, *i. e.,* Paturzo v. Home Life Insurance Co., Civil No. 73–69–N, in which a final judgment was entered on December 4, 1973 by Chief Judge Northrop. The Fourth Circuit affirmed that judgment in an opinion filed September 26, 1974, 503 F.2d 333. In that case, plaintiff's claims included *inter alia,* the same post-mortem dividend claim in issue in this case. Prior to entry of judgment in that case before Chief Judge Northrop, plaintiff instituted the instant suit and moved in the prior litigation for dismissal without prejudice pursuant to Federal Civil Rule 41(a)(2) of his post-mortem dividend claim. After Chief Judge Northrop denied that motion, the case went to trial. At trial plaintiff produced no evidence to support the post-mortem dividend claim and at the conclusion of his case renewed his motion to dismiss that claim without prejudice. Home Life simultaneously moved to dismiss that claim with prejudice pursuant to Federal Civil Rule 41(b) for failure of proof. Judge Northrop denied plaintiff's motion and granted defendant's motion. Home Life contends that Judge Northrop's dismissal with prejudice of the post-mortem dividend claim operates

as an adjudication on the merits, and that under the doctrine of res judicata Paturzo is barred from pressing his post-mortem dividend claim in the instant case. However, the question arises as to whether, since Federal Civil Rule 8(c) makes res judicata an affirmative defense, it may be raised by a motion to dismiss in the circumstances of the two cases. *See* 5 C. Wright & A. Miller, Federal Practice and Procedure §§ 1277–78 (1971). On his part, Hatem takes the position that Judge Northrop's dismissal with prejudice of Paturzo's post-mortem dividend claim may have a collateral estoppel effect as to defendant Hatem. Collateral estoppel, however, is also apparently an affirmative defense, one which may perhaps not be raised by a motion to dismiss. However, because this Court is of the opinion that Paturzo has not in his amended complaint stated a cause of action against Hatem judicially cognizable under 1983, and because this Court will therefore not exercise jurisdiction over Home Life pendent to jurisdiction over Hatem,[1] this Court does not find it necessary to resolve the res judicata and collateral estoppel issues. A consideration of the 1983 issues does, however, require discussion of Maryland's insurance laws.

Article 48A of the Annotated Code of Maryland mandates that each insurer be licensed by the Insurance Commissioner, and that each insurer abide by the law. Among the substantive provisions of Maryland's Insurance Code are prohibitions against misrepresentations with reference to dividends (section 217) and prohibitions against false statements in general (section 218). Section 24 of article 48A requires that the Insurance Commissioner "shall enforce the provisions" of the Insurance Code, and provides that he "may conduct such examinations and investigations of insurance matters, in addition to examinations and investigations expressly authorized, as may be necessary to fulfill the purposes of this article." Section 25 of article 48A empowers the Commissioner to "institute such suits or other legal proceedings as may be required for the enforcement of any provisions of this article." Section 26 additionally grants authority to the Commissioner to "make reasonable rules and regulations necessary for or as an aid to effectuation of any provision of this article."

Plaintiff asserts that Hatem's failure to investigate and take action with regard to Home Life's alleged wrongdoing constitutes a lack of constitutional procedural due process which has resulted in the loss of plaintiff's property, citing Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970), and Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir. 1968). To bolster that contention, plaintiff has filed an affidavit of John Coppage, Special Deputy Insurance Commissioner of Maryland, stating that no attempt has been made by the State Insurance Department to "regulate, detect or correct

---

1. *See* United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). As to whether pendent jurisdiction over a defendant such as Home Life can be exercised where jurisdiction otherwise does not exist over such defendant, even when, as is not the case here, the plaintiff has stated a judicially cognizable claim against another defendant, herein Hatem, see Moor v. County of Alameda, 411 U.S. 693, 714 n. 30, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). In this case, the question left unresolved in *Moor* need not be reached since the thrust of *Gibbs* and *Oursler* either deprives this Court of the authority to exercise pendent jurisdiction over Home Life, or leads this Court in its discretionary authority, if the same exists, not to exercise the same, in view of Paturzo's lack of standing vis-a-vis Hatem for reasons set forth infra. " * * * [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. However, see Mr. Justice Harlan's discussion in Rosado v. Wyman, 397 U.S. 397, 404–405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1967); see also H. M. Hart & H. Wechsler, The Federal Courts and the Federal System 923 (1973). *Cf.* Webb v. Bladen, 480 F.2d 306, 310 (4th Cir. 1973).

abuses, misrepresentations or other unfair insurance practices with respect to post-mortem dividends or refunds of unearned premiums payable to life insurance contracts issued within the State of Maryland."

The threshold question to be determined in this case is whether Paturzo has standing to assert and have litigated the alleged failures of Hatem. In Linda R. S. v. Richard D., 410 U.S. 614, 93 S. Ct. 1146, 35 L.Ed.2d 536 (1973), Mr. Justice Marshall held that a plaintiff, in order to fulfill constitutional standing requirements, must demonstrate a nexus between the abstract injury he alleges he has suffered and the governmental action which he challenges. In Linda R. S., a mother of an illegitimate child sought to enjoin the allegedly discriminatory application of a Texas statute, Tex.Pen.Code art. 602 (1948), which made child desertion, neglect, or non-support a misdemeanor. That statute had been construed by the state district attorney as applicable only to the parents of legitimate children and therefore as inapplicable to the father of plaintiff's child. Plaintiff alleged that the district attorney refused to take action against the father of her child because of that construction of the statute. The Supreme Court interpreted plaintiff's complaint as seeking an injunction against the district attorney forbidding him from refusing to prosecute the father of plaintiff's child. The plaintiff's ultimate legal contention was that the district attorney's interpretation of and practice under the Texas statute violated the Equal Protection Clause of the Fourteenth Amendment.

In his majority opinion, Mr. Justice Marshall acknowledged that plaintiff may have been abstractly injured by the failure of defendant to contribute to the support of plaintiff's child, but wrote (at 618, 93 S.Ct. at 1149) that "the bare existence of an abstract injury meets only the first half of the standing requirement", and, citing Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L. Ed. 1078 (1923), held (410 U.S. at 618, 93 S.Ct. at 1149) that in order for a cause to be judicially cognizable a plaintiff "must be able to show . . . that he has sustained or is immediately in danger of sustaining some *direct* injury *as the result of* [a statute's] enforcement." (Emphasis in original.) Mr. Justice Marshall concluded that plaintiff failed to show that her failure to secure support payments from defendant resulted from the nonenforcement of the Texas statute, since at the most that statute contemplated a fixed penalty upon one who had failed to support a child within the meaning of the statute, and since the prospect that prosecution of the defendant would result in payment of support was at best "speculative". Hence, the required " 'direct' relationship between the alleged injury and the claim sought to be adjudicated, which . . . is a prerequisite of standing", was found wanting. *Id.* at 618, 93 S.Ct. at 1149.

■ Standing requirements are also unsatisfied in this case. Neither Paturzo nor anyone similarly situated can plausibly claim to have been deprived of property without due process of law since Paturzo as well as any disgruntled policyholder can institute a breach of contract suit in a court of the State of Maryland and have his respective assertions of violation of contract rights determined therein either in individual or class suits as permitted by Maryland's statute and rules of procedure. Accordingly, Paturzo cannot show that the alleged derelictions by the State Insurance Commissioner deprived Paturzo of property without due process of law. Accordingly, also, there is no direct relationship between any such alleged derelictions and Paturzo's alleged injury.

The Second Circuit's decisions in the *Holmes* and *Escalera* cases, *supra,* do not support plaintiff's standing in the instant case. Both *Holmes* and *Escalera* involved due process challenges to procedures utilized by the New York Public Housing Authority; in each case, there was practically unavailable to plaintiffs any other means of redress in connection

with alleged arbitrary Housing Authority actions and damages allegedly flowing therefrom. In *Holmes*, the Court indicated (398 F.2d at 267) that New York law provided at best a "dubious" remedy —mandamus—for plaintiff's claims of arbitrarism in public housing admissions procedures. In *Escalera*, the Court noted (425 F.2d at 858) that in the only state court proceeding in which the Authority's termination of a tenant's lease on the grounds of "non-desirability" could be challenged, the determination of "non-desirability" could not be put into question; rather, only the validity, under the tenant's lease, of the Authority's notice to terminate, was litigable in that proceeding.[2]

Nor does Hayes v. Secretary of Department of Public Safety, 455 F.2d 798 (4th Cir. 1972), require a contrary conclusion as to Paturzo than that indicated *supra*. In *Hayes*, an inmate of the Patuxent Institution sued the Secretary of the Maryland Department of Public Safety, alleging that custodial forces at Patuxent—employees within the Secretary's authority—had practiced brutality upon him and upon other inmates, and that the institutional and certain state enforcement authorities had failed to investigate Hayes' complaints. Reversing the District Court's dismissal of Hayes' suit, the Fourth Circuit interpreted Hayes' complaint as asserting that he was entitled to an investigation of charges of brutality and misconduct against correctional officials where the alleged activities violate inmates' civil rights and amount to a violation of state law. Noting (at 801) that it knew of no authority to sustain plaintiff's proposition, and without referring to any standing barrier, the Fourth Circuit concluded that it was error for the trial court summarily to reject plaintiff's complaint under the circumstances of the case without requiring a responsive pleading and, if necessary, an evidentiary hearing. The Fourth Circuit specifically referred (at 800 n. 2) to the possibility that further pleadings or evidence might disclose that there was no need for Hayes to be afforded the relief he sought.

 Herein, the record establishes facts which, for the reasons set forth above, disclose that, as to defendant Hatem, the plaintiff lacks standing to permit a judicially cognizable 1983 claim. As to defendant Home Life, there is neither 1332 jurisdiction nor any basis for exercising pendent jurisdiction. Accordingly, the within complaint is dismissed. It is so ordered.

---

2. *See also* the discussion in *Escalera* 425 F.2d at 865–866 with regard to "state [court] review".